## JULIUS ROMANOFF
### vs.
## JOHN SMITH

| Superior Court | New Haven County | File #48128 |
|---|---|---|

Present: Hon. CARL FOSTER, Judge.

| D. M. Reilly, | Attorney for the Plaintiff. |
|---|---|

| William Gitlitz;<br>Joseph Weiner, | Attorneys for the Defendant. |
|---|---|

**MEMORANDUM FILED DECEMBER 8, 1936.**

FOSTER, J. Washington Avenue in New Haven extends east and west, and Cedar Street extends north and south, and at the intersection of these two streets Washington Avenue is about 30 feet wide, and Cedar Street is about 34 feet wide.

The plaintiff claims that at about 7:30 P.M. (D.S.T.) on July 30, 1935, he was walking from the southwest corner to the northwest corner of the intersection of the crosswalk, when he was struck by an automobile owned and being driven by the defendant in a westerly direction. The plaintiff claims that his injuries were proximately caused by negligence of the defendant as set forth in the complaint without contributory negligence on his own part.

The defendant denies being guilty of any negligence in the premises and claims that the plaintiff's injuries were proximately caused by his own contributory negligence.

Plaintiff claims that he is a baker and was on his way to work and reached the southwest corner of the intersection of the highways, that he stopped at the curb and looked both east and west on Washington Avenue and seeing no traffic approaching he proceeded north toward the northwest corner of the intersection; that when he reached the middle of Washington Avenue he again stopped, looked both east and west for approaching traffic and saw the defendant's automobile about half a block east of the intersection, travelling west; that, believing that he could reach the northwest corner in safety ahead of the approaching automobile, he proceeded and was struck by the right front of the defendant's automobile when he was about 5 feet south of the north curb of Washington Avenue.

The defendant claims that the plaintiff suddenly stepped off from the north curb of Washington Avenue at the northwest corner of the intersection and in front of the defendant's approaching automobile and was proceeding southerly; that at that time the defendant was driving about ten miles per

hour and was only ten feet or fifteen feet away from the plaintiff when he first saw him; that he stopped his automobile in less than its length after striking the plaintiff.

With the evidence so contradictory, it is important to determine in which direction the plaintiff was travelling. It is conceded that it was about 8 P.M. (D.S.T.) on July 30th, and was not dark. It is conceded that the plaintiff then had a position working nights as a baker on the north side of Washington Avenue west of Cedar Street. The natural course for the plaintiff to follow at that time of day was toward the northwest corner of the intersection and not away from that corner. He testifies that he was so travelling, and he is corroborated by other witnesses.

This being so, we proceed to the question of whether or not the plaintiff was in the exercise of reasonable care. He was then sixty-six (66) years of age and was wearing his far-sighted spectacles, his eyesight with the use of which was demonstrated in court. He testifies that he looked both east and west on Washington Avenue before he left the curb at the southwest corner and saw no near approaching traffic, and in this he is corroborated by the witness Amedola. The defendant claims that Washington Avenue is a busy much travelled thoroughfare. It is common experience that on streets much used there are short periods of time when no moving vehicles will be within a block or more of a given point. The plaintiff claims that he again looked for approaching automobiles when he was half way across the street and saw the defendant half a block east of the intersection. It is testified that the block is 200 feet long and that Cedar Street is 34 feet wide. We find the plaintiff considering it safe for him to traverse the remaining 15 feet of the crossing while the defendant was travelling 134 feet. The plaintiff had the right to assume that the defendant would use due care to avoid striking the plaintiff.

I find that the plaintiff was not guilty of any contributory negligence that was the proximate cause of his injuries.

The next question to be decided is whether or not the defendant was guilty of negligence as alleged in the complaint that was the proximate cause of the plaintiff's injuries. The defendant was travelling at a speed of ten to fifteen miles per hour. It was not near enough to darkness to require him to

have his headlights lit. His automobile was a Studebaker touring car converted into a small truck. In his report to the Motor Vehicle Commissioner he said, "I saw a boy about to cross the street. He saw me coming. I felt I had the right of way. I blew my horn. He continued walking and walked right into the car". Either the defendant was directing his attention in some direction other than in the path ahead of him, or he did not exert himself in time to avoid striking the plaintiff. There were tire marks made by the defendant in his effort to stop his automobile that were 20 feet or more in length. When the defendant did try to stop his automobile and avoid hitting the plaintiff, it was too late.

I find that the defendant was guilty of negligence that was the proximate cause of the plaintiff's injuries.

The plaintiff's injuries are described by the doctors as follows: His nose was flattened, swollen, pushed over to the left and downward, covered by recently clotted blood, the bridge of his nose was lacerated and the septum deviated to the left. There was discoloration of both upper and lower right eyelids and evidence of recent bleeding of the pharyngeal wall. There were multiple fractures in the nasal wings of the malleus bone—the bones of the face. The fractured nose and septum were set in proper position and antiseptic dressing was applied to the laceration. The nasal passages were obstructed for about three months. There is a permanent deviation of the septum of the nose which causes partial obstruction to respiration. The plaintiff suffered a fracture in several pieces of the end of the larger one of the two bones of the left forearm at the wrist, a fracture of the lower end of the smaller bone at the wrist, a dislocation of the left elbow. A fracture of the upper end of the smaller bone in the left forearm and a minor fracture of the larger bone. He also suffered a minor injury to the lower or distal end of the clavicle. The fractured bones and dislocated elbow were manipulated and put up in a molded plaster splint and were so kept for a period of three (3) weeks during which time the plaintiff remained in the hospital. Afterwards he received more or less frequent treatments for the recovery of the use of the left arm. At the present time the plaintiff lacks about fifteen (15) degrees of complete extension of the left elbow and has limitation in supernation of the forearm, that is, inability to turn his palm up, amounting to about

thirty (30) to thirty-five (35) degrees. There is no testimony as to the length of time the injury may last, except as above stated.

The plaintiff was earning about twenty-five ($25.00) dollars a week and has not been able to work since he was injured. His hospital bills amount to $242.10. His doctors' bills amount to $225.00.

Judgment is rendered that the plaintiff recover from the defendant damages of Sixty-five Hundred ($6500.00) Dollars.